IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN WEBB, JR.                                                                                   PLAINTIFF

       v.                                    Civil No. 14-2014

SHERIFF HOLLENBECK, Sebastian
County, Arkansas; DEPUTY PARTAIN;
DR. TINSMAN; OFFICER JOHN DEVANE;
and SEBASTIAN COUNTY, ARKANSAS                                                DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      This is a civil rights action filed by the Plaintiff, John Webb, Jr., pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

      The events that are the subject of this lawsuit occurred while the Plaintiff was incarcerated in the Sebastian County Detention Center (SCDC). Plaintiff is currently incarcerated at the Cummins Unit of the Arkansas Department of Correction (ADC).

      While at the SCDC, Plaintiff maintains his constitutional rights were violated when Defendants failed to provide him with adequate medical care following an injury to his back. Plaintiff has named as Defendants Sheriff Bill Hollenbeck, Deputy Partain, Dr. Tinsman, Officer John Devane, and Sebastian County, Arkansas.

      Defendants have filed a Motion for Summary Judgment (ECF No. 25). On February 2, 2016, a hearing was held to allow the Plaintiff to testify in response to the Motion. Plaintiff appeared by video conference. The Summary Judgment Motion is now ready for decision.

## I. BACKGROUND

Plaintiff was incarcerated in the SCDC from March 9, 2011, to November 3, 2011, when he was transferred to the ADC. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) B-1 at 2. When he was booked in, Plaintiff indicated he had high blood pressure, arthritis for which he took Aleve, and acid reflux. *Id.* at 11 & 13. He noted no problems with his back or other injuries. *Id.*

Plaintiff was seen by Dr. Tinsman on March 10, April 14, and June 2, 2011, for complaints related to his blood pressure, depression, clogged ears, and acid reflux. *Defts' Ex.* A at ¶ 2; *Defts' Ex.* B-1 at 17, 20 & 30. Plaintiff made no complaints about problems with his back. *Id.*

On June 27, 2011, while cleaning his cell for a jail check, Plaintiff jumped up in a hurry because he did not have his towel and toilet paper stored in their proper place. (ECF No. 2) If these items were not stored in the proper place, Plaintiff testified you were locked down. (ECF No. 2)

Plaintiff slipped and fell hitting the "rack," or metal bed affixed to the wall, before hitting the concrete floor. (ECF No. 2) Deputy Partain responded to a call for assistance. *Id.* However, Plaintiff testified it took him twenty or thirty minutes to respond. Deputy Partain called the infirmary and the nurse came to the cell. (ECF No. 2) Plaintiff testified that the nurse came into the cell, made a joke about the upcoming jail check, said she was just kidding, and left for about twenty to thirty minutes.

Plaintiff was unable to walk and was carried by other inmates to the infirmary and put on a table. (ECF No. 2) Plaintiff testified that his rights were violated when he was carried in

-2-

an unprofessional manner by the inmates. He does not believe the inmates should have been allowed to put their hands on him.

Plaintiff was alone in the infirmary for approximately 15 to 20 minutes. Plaintiff was seen by Dr. Tinsman later that same day. *Defts' Ex.* A at ¶ 3. According to Dr. Tinsman, Plaintiff reported a sudden onset of back pain resulting from a "twisting" event. *Id.* Plaintiff reported no history of back injury or surgery. *Id.*; *see also Defts' Ex.* B-1 at 31.

Dr. Tinsman performed a physical examination, noting full range of motion with Plaintiff's left leg. *Defts' Ex.* A at ¶ 4. Dr. Tinsman also found normal results in straight leg raise and deep tendon reflex testing. *Id.* He diagnosed a lumbar muscle strain. *Id.* at ¶ 5. The doctor found no evidence of acute trauma or significant nerve compression. *Id.* Dr. Tinsman prescribed a muscle relaxer, Robaxin, and an anti-inflammatory, Mobic. *Id.; see also Defts' Ex.* B-1 at 31.

Plaintiff testified he was seen by Dr. Tinsman, given a few pills, and told to return to his cell. Plaintiff indicated it took him 45 minutes to walk back to his cell. He testified the pills did not work and no one was sent to help him get back to his cell.

On June 30, 2011, Dr. Tinsman saw the Plaintiff and noted that he reported being much better and was able to walk without problems. *Defts' Ex.* A at ¶ 6; *Defts' Ex.* B-1 at 32. Plaintiff did report experiencing some radiating pain on his left leg, and he indicated the Mobic was causing some stomach discomfort. *Id.* Dr. Tinsman ordered the scheduling of an MRI, discontinued the Mobic, and continued the Robaxin along with an over-the-counter muscle rub. *Id.* at ¶ 7.

Plaintiff testified that on June 30, 2011 he did not report being much better and in fact still could not walk very well. He had an injury to the left side of his leg. He indicated he was in a lot of pain.

On July 29, 2011, an MRI of Plaintiff's lumbar spine was performed at Sparks Regional Medical Center. *Defts' Ex*. B-1 at 34-35; *Defts' Ex*. C at 8-9. It showed herniated lumbar disks. *Defts' Ex*. A at ¶ 8; *Defts' Ex*. B-1 at 34-35; *Defts' Ex*. C at 8-9. Dr. Tinsman ordered nursing staff to schedule an appointment with a neurosurgeon to discuss treatment options. *Defts' Ex*. A. at ¶ 8.

Dr. Tinsman next saw the Plaintiff on August 31, 2011. *Defts' Ex*. A ¶ 9; *Defts' Ex*. B-1 at 43. Dr. Tinsman noted the Plaintiff was walking normally but had a slightly decreased range of motion in his back. *Id.* Dr. Tinsman learned the appointment with a neurosurgeon had not yet been made. *Id.* Dr. Tinsman, in order to emphasize the importance of this, wrote that the appointment must be arranged before the end of the next week or the inmate released for medical reasons. *Id.*

On September 5, 2011, Dr. Tinsman suffered a cardiac event that left him unable to continue as jail physician. *Defts' Ex*. A at ¶ 1. Dr. Justin Hayes took over as jail physician approximately two days later. *Id.*

On September 6, 2011, Plaintiff was seen by a specialist, Dr. Thomas Cheyne, at the River Valley Musculoskeletal Center. *Defts' Ex*. B-1 at 46; *Defts' Ex*. D at 3. Dr. Cheyne prescribed a Medrol dose pack and Mobic. *Id.*

On September 23, 2011, Plaintiff was seen by Dr. Hayes who discontinued the Mobic and started Tramadol. *Defts' Ex*. B-1 at 52. It was noted that Plaintiff's follow-up appoint at River

Valley Musculoskeletal on October 6, 2011 should be kept. *Id.* It is not clear from the record whether this appointment was kept.

After his transfer to the ADC, Plaintiff was treated with medication by the ADC physicians. *Defts' Ex.* A at ¶ 12. Plaintiff's medications were changed a number of times. *Id.* The ADC doctors did not recommend surgical intervention. *Id.; see also Defts' Ex.* E.

According to Dr. Tinsman, surgical intervention was not indicated in the Plaintiff's case for two reasons. *Defts' Ex.* A at ¶ 14. First, surgical options for repair of disc protrusion were not nearly as advanced as they are today and often caused as many problems as they fixed. *Id.* Second, Plaintiff never lost any significant functionality due to his back problems. *Id.*

With respect to the Sheriff, Plaintiff testified that he is the administrator of the facility and liable for the actions of his employees. Sheriff Hollenbeck indicates he never spoke to or communicated with the Plaintiff during his 2011 incarceration. *Defts' Ex.* B at ¶ 4. Further, jail records do not indicate Officer Devane ever having spoke with, or communicated with, Plaintiff in 2011. *Id.* at ¶ 5. Further, Sheriff Hollenbeck notes Officer Devane did not become jail administrator until November 1, 2011. *Id.* In his prior position, Officer Devane was not involved in any jail operational issues. *Id.*

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests

with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants move for summary judgment arguing there is no deliberate indifference on the part of any of the named Defendants. To prevail on a denial of medical care claim, the Plaintiff must show: (1) the existence of an objectively serious medical need, and (2) that Defendants knew of and deliberately disregarded that need. Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009). Defendants' mental state must be akin to criminal recklessness. Id. This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (constitutional violation cannot rest on mere disagreement with treatment decisions); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (inmates have no constitutional right to particular course of treatment, and doctors are free to use their own medical judgment); Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors not deliberately indifferent where they treated the prisoner and offered sensible medication). Similarly, "[m]erely demonstrating that

a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citations omitted). To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. at 1066 (internal quotation marks and citation omitted).

Here, Dr. Tinsman argues he used his best medical judgment and provided the Plaintiff with excellent care. He asserts he found it appropriate to treat the Plaintiff's back pain complaints with medication rather than surgical intervention. He asserts he attempted to adjust the medications to achieve the best results for the Plaintiff. He notes he provided the same or similar treatment as that provided to the Plaintiff by physicians who have treated Plaintiff since June 27, 2011. Because there is no proof that he violated clearly established law, Dr. Tinsman also maintains he is entitled to qualified immunity.

I agree. Plaintiff was seen promptly after his injury; he was examined by Dr. Tinsman; appropriate medication was ordered; further testing was ordered; follow-up appointments were made; and, Plaintiff was referred to a specialist. The specialist did not suggest surgical intervention, instead also choosing to treat the Plaintiff's back injury with medication.

Plaintiff has "no constitutional right to receive a particular or requested course of treatment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992). "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."

AO72A
(Rev. 8/82)

Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (citation omitted). Plaintiff has clearly not shown the existence of a genuine issue of material fact as to care rendered by Dr. Tinsman.

With respect to Sheriff Hollenbeck and Officer John Devane, Defendants argue that neither had any personal involvement and are therefore entitled to summary judgment in their favor. I agree. The Plaintiff's claims against Sheriff Hollenbeck and Officer Devane are totally conclusory. Plaintiff has not asserted any factual basis for a claim against Sheriff Hollenbeck or Officer Devane except for their overall responsibility for the jail and for having a trained staff. Nothing in the record before the Court suggests any personal involvement by Sheriff Hollenbeck or Officer Devane in any alleged constitutional violations. In fact, it appears Officer Devane was not even the jail administrator at the relevant times.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. See Monell v. Department of Social Services, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994); see also Whitson v. Stone County Jail, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff]

AO72A
(Rev. 8/82)

must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)); Keeper v. King, 130 F.3d at 1314 (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

There are no allegations that Sheriff Hollenbeck was involved in anyway with the decision of whether the Plaintiff should receive medical treatment, the type of medication he should be prescribed, what tests should be ordered or whether he should be referred to a specialist. Plaintiff did not communicate in anyway with Sheriff Hollenbeck regarding his grievances or complaints about his treatment. No plausible individual capacity claim has been stated against Sheriff Hollenbeck.

Next, Defendants argue no plausible claim has been stated against Deputy Partain. They point out that Deputy Partain's only involvement is that he is the pod deputy who responded to the call for assistance and in turn called the infirmary. I agree. This is clearly insufficient to establish deliberate indifference on his part. To the extent that Plaintiff claims Deputy Partain should not have ordered inmates to transport the Plaintiff to the infirmary, there is no indication that this order, if in fact it was given by Deputy Partain, resulted in any further injury to the Plaintiff or delayed his prognosis.

Finally, Defendants argue there is no basis for an official capacity claim. Defendants note that Plaintiff has not pointed to any unconstitutional county policy or custom. I agree. An official capacity claim "is functionally equivalent to a suit against the employing governmental

entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claim is treated as a claim against Sebastian County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013)(citations omitted). "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations and citations omitted). A "custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law." Id.

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012) (internal quotation marks and citation omitted). Here, Plaintiff makes no such showing. There is no basis on which Sebastian County may be held liable.

## IV. CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 25) be **GRANTED** and this case **DISMISSED WITH PREJUDICE**.

AO72A
(Rev. 8/82)

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of July, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)